UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Transclean Corporation, et al.,

Plaintiffs,

v.

MotorVac Technologies, Inc., et al.,

Defendants.

Civil No. 01-287 JRT/FLN

**REPORT AND RECOMMENDATION**

---

Alan M. Anderson, Esq., for Plaintiffs.
Samuel D. Heins, Esq., & Dennis Martin, Esq., for Defendants.

---

**THIS MATTER** came for a hearing before the undersigned United States Magistrate Judge on January 17, 2002, on Plaintiffs Transclean Corporation, et al.'s Motion to Enforce Settlement Agreement [#19]. The matter was referred to the undersigned for Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons which follow, this Court recommends that Plaintiffs' motion be granted.

## I. BACKGROUND

This case arises from commercial strife between Plaintiff Transclean Corporation ("Transclean") and Defendant MotorVac Technologies, Inc., ("MotorVac"), competitors in the automatic transmission fluid changing equipment business. Transclean is the exclusive licensee and owner of United State Patent No. 5,474,064 ("064 Patent"), reissued as United States Patent No. RE 36,650 ("650 Patent"), and commenced this action against MotorVac and its distributors alleging, *inter alia*, infringement of the aforementioned Patents.

Shortly after Transclean filed suit, MotorVac initiated settlement negotiations and sought a

MAY 0 6 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

settlement of all of Tranclean's claims. These settlement discussions came to a head on July 26, 2001, when MotorVac made a settlement offer during a conference call involving Transclean's attorneys -- Mr. Christopher Larus and Mr. Alan Anderson, MotorVac's attorneys -- Mr. Barry Falk and Mr. Roy Anderson and MotorVac's Chairman of the Board and Vice-President. Transclean rejected MotorVac's offer, but made two alternative counter-offers the next day and confirmed said offers via fax on July 30, 2001. The first counter-offer included an amount based on royalties generated from past and continuing sales of the infringing product. The second counter-offer included a lump sum of $1,001, 207 for MotorVac's past infringement with no on-going license. Specifically, the letter confirming the second proposed offer provided that: "[p]laintiff's are willing to accept a lump sum payment of $1,001,207 for MotorVac's past infringement with no going forward license." The offer also indicated that both settlement offers were "based upon MotorVac's representations regarding its sales [and that] the specific amounts are subject to change in the event MotorVac's representations are inaccurate in any way." See Aff. of Christopher Larus ("Larus Aff."), Ex. E.

On July 31, 2001, Mr. Falk telephoned Mr. Larus and accepted Transclean's offer to dismiss the suit for a lump sum of $1,001,207 and no on-going license. See Larus Aff., ¶ 9. Per Mr. Falk's request, Mr. Larus confirmed this agreement in an e-mail and noted that he would contact Mr. Falk with a "timetable for an exchange of settlement documents and details regarding verification of MotorVac's representations of past sales."[1] Larus Aff., Ex. F. Shortly thereafter, Transclean's

---

[1] The email specifically provided:

> Barry, this will confirm our telephone conversation of today in which you informed me that MotorVac has accepted [Plaintiffs'] offer to

attorneys began drafting a written settlement agreement to memorialize the Parties' agreement. On August 15, 2001, Mr. Larus sent Mr. Falk a first draft of the settlement agreement, including essential terms to which the Parties' orally agreed on July 31, 2001, and other standard boilerplate language. On August 20, 2001, Mr. Falk faxed the settlement agreement back to Mr. Larus, with some handwritten changes on the face of the document. Mr. Larus reviewed the changes, accepted some, rejected others, made some stylistic and insubstantial modifications and faxed a revised copy of the settlement agreement to Mr. Falk on August 22, 2001.

Mr. Larus and Mr. Anderson did not hear back from MotorVac's attorneys for several days about the new changes. On August 30, 2001, Mr. Anderson contacted Mr. Falk to discuss the status of the revised settlement agreement. What happened next is hotly disputed by both parties and it is unclear to this Court whether or not Mr. Falk accepted the revised form of the settlement agreement or indicated that he was waiting for a final copy of the settlement for MotorVac's signatures.[2] Later that day, a final agreement was sent to Mr. Falk, however, he never returned the signed agreement. Finally on September 5, 2001, Mr. Roy Anderson, informed Mr. Larus that MotorVac would not entertain the proposed settlement.

---

> settle the above titled litigation in exchange for a lump sum payment of $1,001,207 for MotorVac's past infringement with no going forward license. As we discussed, I will contact you shortly with a timetable for an exchange of settlement documents and details regarding verification of MotorVac's representations or past sales.

Larus Aff., Ex. E.

[2] This dispute is not a material dispute for reasons set forth later in this Report and Recommendation.

Transclean now seeks to enforce the alleged settlement agreement between the Parties because the July 27, 2001, oral offer stated the essential terms of the agreement and MotorVac's acceptance was unequivocal, addressed all essential terms of the agreement, was a clear "outward manifestation of assent and formed a binding and fully enforceable settlement agreement.

MotorVac does not dispute Mr. Falk's acceptance of Transclean's offer, but essentially argues that: (1) the Parties did not reach agreement on all material terms of the settlement agreement; (2) the offer was not unequivocal because it reserved a contingency; (3) Mr. Falk lacked authority to bind MotorVac to the settlement agreement; and (4) MotorVac cannot be bound absent a signed writing memorializing the Parties' agreement.

## II. DISCUSSION

### A. Standard of Review

The law is well settled that settlement agreements are governed by principles of contract law. See MLF Realty L.P. v. Rochester Ass'n, 92 F.3d 752, 756 (8th Cir. 1996); N.L.R.B. v. Superior Forwarding, Inc., 762 F.2d 695, 697 (8th Cir. 1985)); Ryan v. Ryan, 193 N.W.2d 295, 297 (Minn. 1971). "To constitute a full and enforceable settlement, there must be such a definite offer and acceptance that it can be said that there has been a meeting of the minds on the essential terms of the agreement." Jallen v. Agre, 119 N.W.2d 739, 742-43 (Minn. 1963); Sheng v. Starkey Labs., Inc., 117 F.3d 1081, 1083 (8th Cir. 1997). An offeror is bound by the terms of the offer and cannot subsequently alter its terms without the consent of the other party. See Lefkowitz v. Great Minneapolis Surplus Store, Inc., 86 N.W.2d 689, 692 (Minn. 1957). Consistent with the requirement of a "meeting of the minds, in order to create a legally enforceable contract, a settlement of a lawsuit that is based upon mistake will not be enforced." Id.

Intent to contract, however, is based upon the objective manifestations of the parties and not upon their subjective, but unmanifested intent. See Horton Mfg. Co., Inc. v. Tol-O-Matic Inc., 973 F.2d 649, 651 (8th Cir. 1992). Settlement agreements that do not expressly resolve ancillary issues can, nevertheless, be enforceable. See Triple B & G, Inc. v. City of Fairmont, 494 N.W.2d 49 (Minn. Ct. App.1992) (binding settlement existed when parties agreed on payment of damages, but failed to resolve property owners' demand for additional drainage). Moreover, leaving "insubstantial matters for later negotiation . . . does not vitiate the validity of the agreement reached." Trnka v. Elanco Products Co., 709 F.2d 1223, 1226, n.2 (8th Cir. 1983) (holding that the fact that the parties left some details for counsel to work out during later negotiations cannot be used to abrogate an otherwise valid agreement).

Under Minnesota law, "[a]n attorney may bind his client, at any stage of an action or proceeding, by agreement made in open court or in the presence of the clerk, and entered in the minutes by such clerk, or made in writing and signed by such attorney." Minn. Stat. § 481.08. Thus, "[i]t is not essential to the enforcement of an agreement to settle a case that the agreement be in writing unless it is within the statute of frauds, but the terms of the settlement should normally be stated to the court and taken down by the reporter or otherwise reduced to writing so as to prevent a dispute as to what the terms of the settlement are." Theis v. Theis, 135 N.W.2d 740, 745 (Minn. 1965). Where, as here, a party "seek[s] to have a compromise settlement defeated [they] must bear the burden of proof of demonstrating the agreement's vulnerability." Ryan v. Ryan, supra at 298.

**B. Legal Analysis**

In the instant case, the record evidence unambiguously reflects that: (1) Transclean made a clear and unequivocal offer to dismiss the patent infringement claim for a lump sum payment of

$1,001,207 for MotorVac's past infringement with no going forward license; and (2) this offer was memorialized in a writing that was faxed to MotorVac on July 30, 2001, and contained all the essential terms of the agreement, namely the amount of the settlement and Transclean's agreement to dismiss the case. It is also uncontested that on July 31, 2001, MotorVac's attorney, Mr. Falk, unequivocally accepted Transclean's settlement offer, thus evidencing a "meeting of the minds" on all essential terms of the agreement and creating a binding and enforceable settlement agreement. See Sheng, supra at 1083 (holding that an enforceable settlement agreement arises when the parties reach agreement on all essential terms of the deal).

The record also reveals that per Mr. Falk's request, Mr. Larus confirmed the aforementioned agreement in a July 31, 2001, email and also noted that Mr. Larus would contact Mr. Falk with a "timetable for an exchange of settlement documents and details regarding verification of MotorVac's representations of past sales." The record evidence and the hearing on this matter revealed that Transclean relied on MotorVac's unsupported representation of the infringing product's sales figures in making the aforementioned settlement offer. Consequently, any reference to the verification of those figures was not a condition precedent or reservation, the non-occurrence of which would excuse MotorVac's non-performance, but rather Transclean's attempts to put MotorVac on notice of a potential claim of fraud in the inducement if the actual sales figures were inconsistent with the represented figures.[3]

Under these circumstances, we cannot allow MotorVac to refuse to comply with a valid agreement, all the material terms of which were adopted by the Parties on July 31, 2001, and

[3] There is no evidence in the record regarding the accuracy or inaccuracy of the sales figures represented by MotorVac.

confirmed in a writing. Settlement agreements would be futile if they were subject to reconstruction by one party's second-thoughts. This Court is satisfied, given the thorough negotiations which ensued from the initiation of the underlying lawsuit and the knowledgeable counsel who participated in these negotiations, that the circumstances show a sufficient objective manifestation of assent to the terms of the Parties' July 31, 2001, oral agreement and that they are bound by it.

Accordingly, this Court recommends that Transclean's motion be granted and the terms of the Settlement Agreement, as embodied in the July 31, 2001, email, be adopted as the accurate reflection of the parties' Agreement that was orally reached on July 31, 2001.

## III. RECOMMENDATION

Based upon the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiffs Transclean Corporation, et al.'s Motion to Enforce Settlement Agreement [#19] be **GRANTED**.[4]

DATED: May 3, 2002.

Franklin L. Noel
FRANKLIN L. NOEL
UNITED STATES MAGISTRATE JUDGE

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by

---

[4] Following MotorVac's refusal to comply with the settlement agreement, one of the distributors represented by MotorVac, Snap-On, Inc., entered into an agreement with Transclean wherein Snap-On, Inc., paid a certain sum in royalties in exchange for the right to sell its inventory of accused products. During the hearing, Transclean agreed that since its claim against Snap On, Inc., was subsumed within the aforementioned settlement agreement, the final settlement figure must be offset by the amount of money received from Snap-On, Inc.

Furthermore, insofar as Transclean seeks costs and fees incurred as a result of this motion, it should be denied.

filing with the Clerk of Court and serving on all parties, within ten days of service of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed within 10 days a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.