**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

TRANSCLEAN CORP.;
JAMES P. VIKEN; JON A. LANG; and
DONALD E. JOHNSON,

Plaintiffs,

v.

MOTORVAC TECHNOLOGIES, INC.;
SNAP-ON INC.; PENSKE AUTO
CENTERS, LLC; and AUTOMOTIVE
SHOP SERVICES, INC.,

Defendants.

Civil No. 01-287 (JRT/FLN)

**ORDER ADOPTING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

---

Alan M. Anderson, Christopher K. Larus, and Sharna A. Wahlgren, FULBRIGHT & JAWORSKI L.L.P., 225 South Sixth Street, Suite 4850, Minneapolis, MN 55402, for plaintiffs.

Samuel D. Heins, Daniel E. Gustafson, and Karla M. Gluek, HEINS MILLS & OLSON, P.L.C., 700 Northstar East, 608 Second Avenue South, Minneapolis, MN 55402; and Dennis G. Martin, BLAKELY, SOKOLOFF, TAYLOR, & ZAFMAN, 12400 Wilshire Boulevard, Suite 700, Los Angeles, CA 90025, for defendant Motorvac Technologies.

This matter is before the Court on defendant MotorVac Technologies' ("MotorVac") objections to the Report and Recommendation of United States Magistrate Judge Franklin L. Noel, dated May 3, 2002. The Magistrate Judge recommended that

FILED SEP 30 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD. ____
DEPUTY CLERK ____

plaintiffs' Motion to Enforce Settlement Agreement be granted. This Court has conducted a *de novo* review of MotorVac's objections under 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.1(c)(2). For the reasons set forth below, the Court adopts the Report and Recommendation and grants plaintiffs' motion.

**BACKGROUND**

This motion arises out of a patent infringement lawsuit by Transclean Corporation ("Transclean") and its co-plaintiffs against defendant MotorVac Technologies, Inc. ("MotorVac"). Transclean and MotorVac both manufacture equipment for changing automatic transmission fluid. Transclean owns United States Patent No. 5,472,064, reissued as Patent No. RE 36,650, and alleges that MotorVac infringed upon these patents.

The parties entered settlement negotiations, and on July 26, 2001, MotorVac made an oral settlement offer via conference call involving plaintiffs' attorneys, Christopher Larus ("Larus") and Alan Anderson, and MotorVac's attorneys, Barry Falk ("Falk") and Roy Anderson. Plaintiffs orally rejected MotorVac's offer on July 27, 2001, but made two alternative counteroffers. One of these counteroffers was that plaintiffs would dismiss their claims in exchange for a lump sum of $1,001,207, and MotorVac would not receive any future license to use the designs that allegedly infringed upon Transclean's patents. Plaintiffs provided that the settlement amount was subject to change if MotorVac's statements about its sales of infringing machines proved inaccurate. Larus faxed plaintiffs' oral rejection and counteroffer to MotorVac's counsel, Roy Anderson,

on July 30, 2001.[1] On July 31, 2001, MotorVac attorney Falk telephoned Larus and stated, "We accept your offer." Per Falk's request, Larus sent an e-mail that same day confirming the offer and acceptance.[2]

The parties' attorneys then attempted to put the agreement into writing to be signed by the parties. On August 15, 2001, plaintiffs' counsel Larus sent Falk a proposed draft of the settlement agreement, which included the essential terms previously agreed upon. Falk made changes and faxed it back to Larus on August 20, 2001. Larus accepted some of Falk's changes, made additional changes, and faxed a revised copy to Falk on August 22, 2001.

The parties disagree about what happened between August 22, 2001 and September 5, 2001. Plaintiffs assert that Falk orally accepted the terms of the writing

---

[1] The fax stated in relevant part:

> Alternatively, the Plaintiffs are willing to accept a lump sum payment of $1,001,207 for MotorVac's past infringement with no going forward license . . . . [T]hese settlement offers are based upon MotorVac's representations regarding its sales. The specific amounts are subject to change in the event MotorVac's representations are in any way inaccurate.

(Gustafson Aff. Ex. C.)

[2] The e-mail provided:

> Barry, this will confirm our telephone conversation of today in which you informed me that MotorVac has accepted the Plaintiff's offer to settle the above titled litigation in exchange for a lump sum payment of $1,001,207 for MotorVac's past infringement with no going forward license. As we discussed, I will contact you shortly with a timetable for an exchange of settlement documents and details regarding verification of MotorVac's representations of past sales.

(Gustafson Aff. Ex. C.)

faxed on August 22, 2001. MotorVac insists that Falk could not have done so, because the terms of the August 22, 2001 writing were unacceptable to MotorVac.[3] On September 5, 2001, MotorVac attorney Roy Anderson informed Larus that MotorVac would no longer entertain the proposed settlement. Plaintiffs then filed the present motion requesting that the Court enforce the settlement.

## ANALYSIS

### I. Rule 56(f) Motion

MotorVac argues, and plaintiffs do not dispute, that the Motion to Enforce Settlement is dispositive, and should therefore be treated as a motion for summary judgment. Under Rule 56(f) of the Federal Rules of Civil Procedure, the Court may delay judgment on a motion for discovery to be taken when one party cannot present by affidavit the facts necessary to oppose the motion. Fed. R. Civ. P. 56(f). MotorVac sought to depose plaintiffs' attorneys about the settlement negotiations, but the Magistrate Judge did not allow it. MotorVac objects that this decision was an abuse of discretion, because information obtained from these depositions is crucial to MotorVac's ability to present a defense.

The Court rejects MotorVac's argument for two reasons. First, when MotorVac subpoenaed plaintiffs' attorneys for depositions, plaintiffs moved to quash the subpoenas. Magistrate Judge Noel granted the motion on November 27, 2001. *See In Re Subpoenas of Alan M. Anderson & Christopher K. Larus*, Misc. No. 01-68 (D. Minn.). MotorVac

[3] The Court agrees with the Magistrate Judge that this dispute is immaterial, because of the analysis that follows.

did not appeal this Order within the ten-day time limit. *See* D. Minn. LR 72.1(c)(2). MotorVac's present argument is, in substance, an untimely appeal of the Magistrate Judge's November 27, 2001 Order, and therefore must be rejected.

Second, no discovery was necessary for the Magistrate Judge to properly issue his Report and Recommendation. Rule 56(f) permits postponement of a dispositive ruling when the non-moving party shows that it cannot respond to the movant's affidavits, and demonstrates that discovery will enable it to show that there is a genuine issue of material fact. *Duffy v. Wolle*, 123 F.3d 1026, 1040 (8th Cir. 1997). However, Rule 56(f) does not permit a "fishing expedition," in which one party simply hopes to uncover some evidence that may help its case. *Id.* at 1041. *See Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 606 (8th Cir. 1999) ("A conclusory statement that some useful evidence could possibly be found is insufficient to preclude the termination of discovery."). MotorVac argues that depositions are necessary to inquire into: (1) the exact words used in discussions between the parties' counsel; and (2) why plaintiffs' counsel insisted on reviewing MotorVac's financial statements before finalizing a settlement amount. The Court finds that these inquiries are little more than a "fishing expedition," and that MotorVac has not been prevented from presenting facts essential to justify its opposition. First, MotorVac's own attorneys participated in the discussions in question, and can provide the same information that depositions of plaintiffs' attorneys would reveal. Second, plaintiffs have clearly stated why they wanted to view MotorVac's sales records – because a change in these figures could change the lump sum it was offering. Because

MotorVac has not shown that deposing plaintiffs' attorneys will uncover facts that would materially affect its ability to oppose plaintiffs' motion, MotorVac's first objection fails.

## II. Attorney Authorization to Enter a Binding Settlement

MotorVac next argues that the settlement agreement is not binding because its counsel lacked authority to bind the company. The Magistrate Judge, applying Minnesota law, found that the acceptance by MotorVac's counsel was legally binding. MotorVac argues that California law should be applied to the question of attorney authority, and that under California law, MotorVac's attorneys could not bind the company. In response, plaintiffs argue that federal common law should be applied to this question.

### A. Choice of Federal Common Law or State Law

Before addressing MotorVac's dispute with the Magistrate Judge over whether to apply Minnesota or California law, the Court must determine whether state law applies at all. Plaintiffs claim "it is well settled in this circuit" that settlement agreements are governed by federal common law. This, however, is incorrect.

Plaintiffs cite only two district court cases from the Eighth Circuit holding that federal common law governs settlement agreements. *See Shell v. Amalgamated Cotton Garment*, 871 F. Supp. 1173 (D. Minn. 1994); *Bergstrom v. Sears, Roebuck & Co.*, 532 F. Supp. 923, 931 (D. Minn. 1982) (holding that federal common law applies when "the rights of the litigants and the operative legal policies derive from a federal source"). Plaintiffs point to no Eighth Circuit Court of Appeals cases holding that federal common

law governs settlement agreements of federal cases generally, or of patent actions in particular. Nor can this Court find any such cases. Moreover, it appears that the cases plaintiffs do provide are not good law.

In *Shell v. Amalgamated Cotton,* an ERISA[4] case, the court held that because the outcome of the case would directly affect rights and obligations under a federally-regulated ERISA plan, federal common law should apply.[5] *Shell*, 871 F. Supp. at 1180. However, in another ERISA decision written two years later, the same district court judge[6] held just the opposite, stating that "a settlement agreement does not 'arise under' (to borrow a jurisdictional term) ERISA . . . and **its enforceability would appear to be a question of state law**." *Health & Welfare Plan for Employees of REM, Inc. v. Ridler*, 942 F. Supp. 431, 434 n.3 (D. Minn. 1996) (emphasis added). Therefore, this Court finds *Shell* unpersuasive.

The only other case that plaintiffs cite in support of applying federal common law comes from the Seventh Circuit. *See Taylor v. Gordon Flesch Co.*, 793 F.2d 858 (7th Cir. 1986). This case, which held that settlement agreements in federal court must be enforced by federal law, has been essentially overruled by subsequent Seventh Circuit

---

[4] The Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*

[5] The court's support for this determination was far from ringing. The court agreed with the defendants that common law should apply, stating that the plaintiffs gave no reason to "distinguish [the] case from ERISA decisions applying federal common law principles to questions of contract law," and that the court was "unable to find any reason to exempt the contract issue in [the] case from application of federal common law." *Shell v. Amalgamated Cotton Garment*, 871 F. Supp. 1173, 1180 (D. Minn. 1994).

[6] The Honorable Richard H. Kyle.

decisions. *See Lynch v. SamataMason*, 279 F.3d 487, 490 (7th Cir. 2002) (stating that in the Seventh Circuit, any doubt over whether state or federal law governs settlement of a federal suit "has been dispelled; it is state law"); *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 338 (7th Cir. 2000); *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996) ("A settlement agreement is merely a contract between the parties . . . . [and as] such, the formation, construction, and enforceability of a settlement agreement is governed by local contract law."). Thus, *Taylor* is also not persuasive.

More important than the invalidity of plaintiffs' cases, however, are the many cases in the Eighth Circuit and other courts which hold that state law applies to settlement agreements. These cases, together, also undermine any persuasive authority of the District of Minnesota's *Bergstrom* decision. *See, e.g.*, *In re Airline Ticket Commission Antitrust Litigation*, 268 F.3d 619, 623 (8th Cir. 2001) (accepting the parties' mutual contention that a settlement agreement is to be construed under contract principles and that Minnesota law applies); *Sheng v. Starkey Laboratories, Inc.*, 117 F.3d 1081, 1083 n.1 (8th Cir. 1997) (applying Minnesota law to a Title VII settlement agreement); *Health & Welfare Plan*, 942 F. Supp. at 434 n.3.[7]

The U.S. Court of Appeals for the District of Columbia recently recognized that the law on this question, far from being nationally uniform, is in "disarray," and that several circuits, including the Eighth Circuit, have decided that state law governs. *See Makins v. District of Columbia*, 277 F.3d 544, 547 (D.C. Cir. 2002) (citing *In re Airline*

---

[7] It is also well settled in the Eighth Circuit that in diversity cases, settlement contracts must be construed according to state law. *Barry v. Barry*, 172 F.3d 1011, 1013 (8th Cir. 1999).

*Ticket Commission*, 268 F.3d 619). In *Makins*, the D.C. Circuit held that federal common law governs settlement agreements only when a settlement agreement is sought to be enforced against the United States, or when a statute gives the court such power. *Id.* at 548.

The Northern District of New York used similar reasoning in *Sears, Roebuck & Co. v. Sears Realty Co., Inc.*, 932 F. Supp. 392 (N.D.N.Y. 1996). *Sears*, a trademark case, extensively discussed this question, and explicitly rejected the reasoning embraced by *Bergstrom* – that federal law should apply because it is the source of parties' liability and rights. *See id.* at 399 ("[T]he mere presence of federal law as a source of the parties' rights and liabilities does not, in itself, mandate the application of federal law."). *Cf. Bergstrom*, 532 F. Supp. at 931 ("Creation of a federal rule . . . is appropriate where . . . the rights of the litigants and the operative legal policies derive from a federal source.")[8] The court in *Sears* noted, significantly, that 28 U.S.C. § 1338, which governs both patent and trademark lawsuits, is merely a jurisdictional statute, and does not give parties any substantive rights. *Id.* Therefore, simply because a lawsuit is brought pursuant to

---

[8] *Bergstrom* draws its holding from a Fifth Circuit case, *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207 (5th Cir. 1981). *See Bergstrom v. Sears, Roebuck & Co.*, 532 F. Supp. 923, 931 (D. Minn. 1982) (quoting *Fulgence*). *Sears* thoroughly analyzed and distinguished *Fulgence*, explaining that the case is confined to settlement agreements in Title VII cases. *Sears, Roebuck & Co. v. Sears Realty Co., Inc.*, 932 F. Supp. 392, 398 (N.D.N.Y. 1996). The *Sears* court explained *Fulgence* by noting that there was basis for establishing federal common law in Title VII cases, because Congress expressed a particular interest in encouraging settlement of such claims, and that the Supreme Court had established prerequisites to the validity of settlement agreements under Title VII. *Id.* *Sears*, which addressed trademark infringement under the Lanham Act, further noted that neither Congress nor the Supreme Court expressed similar interest in settlement agreements under the Lanham Act. Likewise, in this case, this Court has found no authority showing that Congress or the Supreme Court has expressed a particular interest in encouraging settlement of patent claims.

§ 1338, as has this case, does not mean that federal common law must govern. Here, the parties' substantive rights do not arise under federal law, but under an ordinary contract. Therefore, ordinary contract law – state law – should apply. *See In re Airline Ticket Commission*, 268 F.3d at 623.

The next question *Sears* presented, which this Court must also address, is whether, in the absence of a federal rule of decision governing this case, the Court should create one. This is generally disfavored, as Congress has expressed its desire in the Rules of Decision Act for federal courts to apply state rules. *Sears*, 932 F. Supp. at 399. *See* 28 U.S.C. § 1652; *Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 & n.4 (11th Cir. 2000) (noting that federal common law is rarely applied, and holding that state contract law applies to a settlement agreement under the Americans with Disabilities Act). *Sears* noted several exceptions, in which courts have created federal rules of decision. *See Sears*, 932 F. Supp. at 399-400 (listing some of these factors, including conflict between federal and state interests, need for uniformity, preemption, and remedying unequal bargaining power). One such exception is the perceived need for uniformity among the states. *Id.* at 399. *Sears* noted that the need for uniform rules may exist where Congress provides federal courts with exclusive jurisdiction over a certain area. The court stated that ERISA was one such example, and patent law another. *Id.* at 400. At the same time, however, the *Sears* court noted that the U.S. Supreme Court has generally "declined to adopt federal common law for purely private disputes, even ones that potentially affect federal interests." *Id.* Therefore, despite the fact that federal courts

have exclusive jurisdiction over patent disputes, the settlement agreement in this case may still be governed by state law.

This is further supported by cases from the Federal Circuit, which has repeatedly held that settlement agreements in patent cases should not be governed by federal common law. *See Gjerlov v. Schuyler Laboratories, Inc.*, 131 F.3d 1016, 1020 (Fed. Cir. 1997) ("Even though affecting a patent infringement action, breach of the [settlement] Agreement here presents a question of contract interpretation because its grounds for decisions are based on state contract law. The question of interpretation is therefore governed by . . . state contract law."); *Interspiro USA, Inc. v. Figgie Int'l, Inc.*, 18 F.3d 927, 931 (Fed. Cir. 1994) ("Interpretation of an agreement presents a question of law, governed by state contract law."); *S & T Mfg. Co. v. Hillsborough County, Fla.*, 815 F.2d 676, 678 (Fed. Cir. 1987) (holding that a settlement agreement is a non-patent issue, and therefore can be governed by state contract law).

This case is an action between two private parties, in which no federal interests appear to be present, much less in conflict with any state interests. *See Sears*, 932 F. Supp. at 400-01. Therefore, this Court finds that the overwhelming weight of authority favors application of state law to the settlement agreement in this patent case. Therefore, the Court will analyze the settlement agreement and questions of attorney authority according to state law. The only remaining question is which state's law to apply.

### B. Choice of California or Minnesota Law

The Magistrate Judge applied Minnesota law to the question of attorney authority to bind MotorVac. MotorVac objects, arguing that the Court must apply the law that Minnesota state courts would apply, and that is California law, because MotorVac is a California corporation with California attorneys.

Both Minnesota and California have significant contacts with this case, so that the law of either state could constitutionally be applied. *See Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981); *Jepson v. General Casualty Co.*, 513 N.W.2d 467, 469 (Minn. 1994). Minnesota is plaintiffs' home and the forum of this litigation, while California is defendant's home and the place where the alleged infringement took place. Therefore, the Court must conduct a choice-of-law analysis. *See Schiele v. Charles Vogel Mfg. Co., Inc.*, 787 F. Supp. 1541, 1552 (D. Minn. 1992); *Jepson*, 513 N.W.2d at 469. The first step in this process is assessing whether an actual conflict exists between the two laws. *Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.*, 604 N.W.2d 91, 93-94 (Minn. 2000). An actual conflict exists if the choice of one state's law over the other will determine the outcome of the case. *Id.*

#### 1. Result Under California Law

The California Code of Civil Procedure provides:

> If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement.

Cal. Civ. P. Code § 664.6. California courts have interpreted this section to mean that settlements may only be enforced to end litigation if the settling parties appear in court and personally stipulate to the settlement, or sign a writing stipulating to the settlement. *Wackeen v. Malis*, 118 Cal. Rptr. 2d 502, 510 (Cal. Ct. App. 2002); *Williams v. Saunders*, 64 Cal. Rptr. 2d 571, 573 (Cal. Ct. App. 1997). The term "parties" means the parties themselves; the appearance or signature of counsel cannot bind parties, even if the lawyers are authorized to conclude a settlement. *Levy v. Superior Court*, 896 P.2d 171, 175-76 (Cal. 1995).

In this case, nearly all negotiation was done through counsel. No parties stipulated to the agreement in court, and no writing was signed. Therefore, if California law applies here, MotorVac is not bound by the alleged settlement.

**2. Result Under Minnesota Law**

Whether a settlement is oral or in writing, attorneys must have authorization to settle in order to bind their clients. Minn. Stat. § 481.08; *Schumann v. Northtown Ins. Agency*, 452 N.W.2d 482, 483 (Minn. Ct. App. 1990). Authority must be expressly granted, and may not be implied simply from an attorney's position. *Rosenberg v. Townsend, Rosenberg & Young, Inc.*, 376 N.W.2d 434, 437 (Minn. Ct. App. 1985). However, an attorney's unauthorized settlement of a claim may still bind a client through the theory of implied acceptance. *Id.* at 437-38; *Schumann*, 452 N.W.2d at 484. Implied acceptance may be found through conduct or even silence, if the party has a duty to deny. *Schumann*, 452 N.W.2d at 483. In *Schumann*, as here, settlement negotiations were

conducted through the parties' attorneys. *Id.* Plaintiff's attorney sent a letter purporting to accept a settlement offer, and a copy was provided to the plaintiff. *Id.* Plaintiff did not immediately deny that his attorney had authority to accept a settlement offer. *Id.* The Minnesota Court of Appeals therefore held that plaintiff had impliedly accepted the settlement, and was bound by it. *Id.* at 485.

In the present case, it is undisputed that MotorVac initiated settlement negotiations through its attorneys. It is also undisputed that on July 31, 2001, MotorVac's attorney telephoned plaintiffs' attorney and stated, "We accept your [settlement] offer." (*See* Def. Mem. Opposing Motion at 4.) The parties then began drafting a writing to memorialize the settlement. Negotiations between MotorVac's attorneys and plaintiffs' attorneys, which including faxing written drafts back and forth, continued from July 31, 2001 until August 22, 2001. MotorVac does not claim it was unaware of its attorneys' acceptance, or of the process by which the agreement was reduced to writing. On the contrary, the record contains ample evidence that MotorVac was aware of counsel's actions. (*See* Melody Dec.) Despite its awareness of the agreement, however, MotorVac did not assert that its counsel lacked authority to settle until more than one month after counsel accepted the offer on MotorVac's behalf. Therefore, the Court finds that if Minnesota law applies, MotorVac is bound by the alleged settlement under the theory of implied acceptance.

### 3. Minnesota Choice of Law Analysis

Since the choice of state law will determine the outcome of this case, a choice-of-law analysis is necessary. *Nodak*, 604 N.W.2d at 93-94. The Court conducts this analysis under the law of the forum state, Minnesota. *Schiele*, 787 F. Supp. at 1550. Minnesota uses five factors to determine which law applies: (1) predictability of result; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interests; and (5) application of the better rule of law. *Jepson*, 513 N.W.2d at 470; *Milkovich v. Saari*, 203 N.W.2d 408, 416-17 (Minn. 1973).

The first factor, predictability of result, is intended to preserve the parties' justified expectations of which law will apply. *Nodak*, 604 N.W.2d at 94. MotorVac argues that because it is a California corporation with California attorneys, it had a legitimate expectation that California law would control the attorney-client relationship. This expectation is greatly diminished here, however, because all the relevant attorney-client interactions concerned settlement of litigation in the District of Minnesota. Because courts in the Eighth Circuit apply state law to settlements – a point that MotorVac does not dispute – MotorVac knew or should have known that Minnesota law could apply to any settlement issues. Therefore, this factor favors the application of Minnesota law. *See H Enterprises Int'l, Inc. v. General Elec. Capital Corp.*, 833 F. Supp. 1405, 1417 (D. Minn. 1993) (holding that predictability favored Minnesota law because application of Minnesota law was foreseeable); *Schiele*, 787 F. Supp. at 1552 (same).

Maintenance of interstate and international order is concerned with whether application of one state's law would show disrespect for the other state's sovereignty or would encourage forum shopping. *Jepson*, 513 N.W.2d at 471. The other state's sovereignty is respected so long as "the state whose laws are ultimately applied [has] sufficient contacts with the facts in issue." *Hague v. Allstate Ins. Co.*, 289 N.W.2d 43, 48 (Minn. 1978), *aff'd*, 449 U.S. 302 (1981). In the present case, Minnesota and California have roughly equal contacts with the facts at issue. Transclean is a Minnesota corporation and MotorVac is a California corporation. Settlement negotiations and communications took place by telephone, fax, and e-mail. The alleged patent infringement took place in California, and the litigation took place in Minnesota. Because these contacts are essentially balanced and there is no evidence of forum shopping, this factor does not favor either state's law.

Simplification of the judicial task is not a significant factor in this case because the law of either state can be applied without difficulty. *See Jepson*, 513 N.W.2d at 472.

Advancement of the forum's governmental interest reflects a concern that Minnesota courts should "not be called upon to determine issues under rules which, however accepted they may be in other states, are inconsistent with [Minnesota's] own concept of fairness and equity." *Milkovich*, 203 N.W.2d at 417. Here, applying California law would prevent plaintiffs from enforcing the alleged settlement. This is inconsistent with Minnesota's policy that "settlement of lawsuits is greatly favored and such settlements will not be set aside lightly by the courts." *Schumann*, 452 N.W.2d at 483. Moreover, Minnesota undoubtedly has an interest in providing compensation to

Minnesota corporations whose patents have been infringed upon. However, the Court must also consider California's public policy, and compare the states' relative interests. *See Northwest Airlines, Inc. v. Astraea Aviation Serv., Inc.*, 111 F.3d 1386, 1394 (8th Cir. 1997); *Myers v. Government Employees Ins. Co.*, 225 N.W.2d 238, 242 (Minn. 1974). California Civil Procedure Code § 664.6 was intended to "protect parties against hasty and improvident settlement agreements by impressing upon them the seriousness and finality of the decision to settle," and to protect parties from the "impairment of their substantial rights without their knowledge and consent." *Levy*, 896 P.2d at 175. California undoubtedly has a strong interest in granting these protections to parties litigating in its own court system. However, California has only a minimal interest in regulating how settlements are handled in Minnesota courts, even if California parties are involved. California parties and their attorneys know, or should know, that they may be subject to different rules of law when litigating in other states. This case also does not present an issue of "hasty and improvident" settlements, and MotorVac does not argue that its alleged acceptance was made in haste or in error. Moreover, the settlement at issue here was clearly subject to significant negotiation. In this case, therefore, applying California law would directly undermine Minnesota's policy of encouraging settlements in its own courts, while application of Minnesota law will not prevent California from protecting parties in its own courts. Therefore, this factor favors application of Minnesota law.

Choice of the better law is of concern only when the first four factors are not dispositive. *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 740 (8th Cir. 1995) (citing *Myers*,

225 N.W.2d at 244). Furthermore, this factor has been given little or no weight in recent years. *Nodak*, 604 N.W.2d at 96.

The Court concludes that the choice of law factors favor applying Minnesota law. Therefore, if a settlement agreement was formed, it became binding on MotorVac through its attorneys' actions and the theory of implied acceptance. Accordingly, MotorVac's second objection fails.

## III. Contract Formation

The Magistrate Judge found that plaintiffs made an offer, MotorVac accepted the offer, and therefore a valid contract was formed. MotorVac objects that no settlement agreement was formed because: (1) there was not an agreement on all material terms; (2) there was no intent to be immediately bound; and (3) plaintiffs imposed a condition precedent that never occurred.

### A. Agreement on Material Terms

To constitute a full and enforceable settlement agreement, all the essential terms must be agreed upon. *Ryan v. Ryan*, 193 N.W.2d 295, 297 (Minn. 1971); *Jallen v. Agre*, 119 N.W.2d 739, 743 (Minn. 1963). Material terms are those terms that the settlement hinges upon. *See Sheng*, 117 F.3d at 1083 (holding that a valid settlement was reached when parties agreed to dismiss all claims in exchange for $73,500, and that the deal did not hinge on tax treatment of money and wording of liability release); *Triple B & G, Inc., v. City of Fairmont*, 494 N.W. 2d 49, 53 (Minn. Ct. App. 1992) (holding that a binding settlement was reached when amount of damages was agreed upon, and property owner's

unresolved demand for additional land drainage was not material). Leaving "insubstantial matters for later negotiation" will not defeat a settlement when all of the material terms were agreed upon. *See Bergstrom*, 532 F. Supp. at 932 (D. Minn. 1982); *Trnka v. Elanco Pros. Co.*, 709 F.2d 1223, 1226 n.2 (8th Cir. 1983).

In this case, the parties agreed that MotorVac would pay plaintiffs $1,001,207, and in exchange plaintiffs would dismiss their patent infringement suit against MotorVac. The parties also agreed that MotorVac would not receive a going forward license. These facts are undisputed. The question is whether they represent the agreement's only material terms. This is a legal determination for the Court. The Magistrate Judge found that these were the only material terms, and that the parties' disagreements were over insubstantial matters. MotorVac objects, claiming there was no agreement about exactly which machines would be released, or about whether MotorVac would be permitted to contest the validity of Transclean's patents in future suits. Despite MotorVac's claims that these issues were "deal breakers," the record shows that such terms were not actually material. These issues were not discussed before plaintiffs made their settlement offer, and nothing indicates that MotorVac was especially concerned with these terms after it accepted, until plaintiffs filed the motion to enforce the settlement. In light of this evidence, the Court concludes that the Magistrate Judge correctly found that there was agreement on all material terms.[9] MotorVac's third objection will therefore be overruled.

---

[9] MotorVac's reliance on *MIF Realty L.P. v. Rochester Assoc.*, 92 F.3d 752 (8th Cir. 1996), to show that material terms were never agreed upon is misplaced. In *MIF* neither party argued on appeal that agreement on all material terms had been reached. *See id.* at 756.

**B. Intent to be Bound**

When interpreting a contract, the Court must ascertain and give effect to the expressed intentions of the parties. *Froysland v. Leef Bros., Inc.*, 197 N.W.2d 656, 660 (Minn. 1972) (quoting *Grimes v. Toensing*, 277 N.W. 236, 238 (Minn. 1938)). "The secret, unexpressed intention of the parties" does not matter. *Id.*

MotorVac objects that it cannot be bound because its counsel did not intend for it to be bound until a writing was signed. The actions of MotorVac's counsel, however, demonstrated an intent to be immediately bound. MotorVac's counsel did not qualify the acceptance in any way, but rather requested that plaintiffs immediately send a written confirmation of the offer and acceptance. This request is most reasonably interpreted as MotorVac's attempt to ensure that plaintiffs could not back out of the settlement. Since MotorVac's counsel expressed intent to be immediately bound, any unexpressed intention not to be bound until MotorVac's board had approved the settlement is of no consequence. MotorVac's objection in this regard is therefore overruled.

**C. Existence of a Condition Precedent**

A condition precedent is "an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." *Seman v. First State Bank*, 394 N.W.2d 557, 560 (Minn. Ct. App. 1986) (quoting Restatement (2d) of Contracts § 224 (1981)); *Scott v. Forest Lake Chrysler-Plymouth-Dodge*, 611 N.W.2d 346, 350 n. 6 (Minn. 2000). When a contract contains a condition precedent, a party does not acquire any rights under the contract until the condition

occurs. *Nat'l Union Fire Ins. v. Schwing Am., Inc.*, 446 N.W.2d 410, 412 (Minn. Ct. App. 1989). However, a party may unilaterally excuse a condition precedent if the condition was intended solely for that party's benefit and protection. *Dolder v. Griffin*, 323 N.W.2d 773, 778 (Minn. 1982); *Hanson v. Moeller*, 376 N.W.2d 220, 224 (Minn. Ct. App. 1985).

MotorVac objects that neither party acquired any rights or obligations under the settlement agreement because plaintiffs reserved a condition precedent. MotorVac points to the following language in plaintiffs' offer: "[T]hese settlement offers are based upon MotorVac's representations regarding its sales. The specific amounts are subject to change in the event MotorVac's representations are in any way inaccurate." (Gustafson Aff. Ex. C.) It is undisputed that plaintiffs repeatedly insisted that before the settlement amount – a material term – would be final, MotorVac must provide documentation showing its sales of infringing machines. MotorVac never provided the required documents.

The Court agrees that plaintiffs did reserve a condition precedent. *See Hehl v. Estate of Klotter*, 277 N.W.2d 660, 662-63 (Minn. 1979) (holding that "subject to" language created a condition precedent); *Johnson v. Brakemeier*, No. C1-95-1212, 1996 WL 5820 (Minn. Ct. App. Jan. 9, 1996). However, a condition is impliedly excused when the party benefited by the condition continues to demand performance knowing that the condition has not been met. *Appollo v. Reynolds*, 364 N.W.2d 422, 424 (Minn. Ct. App. 1985). Here, the Court finds that plaintiffs have excused the condition precedent by

seeking to enforce the settlement agreement, even though MotorVac has not fulfilled the condition.

## IV. MotorVac's Attempt to Rescind

A party to a contract may rescind only if the other party has materially breached the agreement or has substantially failed to perform. *Gaertner v. Rees*, 107 N.W.2d 365, 368 (Minn. 1961); *Cloverdale Foods of Minn., Inc. v. Pioneer Snacks*, 580 N.W.2d 46, 49 (Minn. Ct. App. 1998). MotorVac argues that plaintiffs breached the settlement agreement by entering into a separate contract with one of MotorVac's co-defendants, Snap-On, Inc. MotorVac argues that it should therefore be permitted to rescind the settlement agreement. The Court disagrees. The Snap-On agreement allowed Snap-On to sell its inventory of infringing machines in exchange for payments to Transclean. MotorVac has failed to show, and the Court cannot find, how this agreement constitutes a breach of the settlement agreement. The settlement agreement requires Transclean to forego future claims against Snap-On, and Transclean has not made any such claims. Because the Snap-On agreement did not materially breach the settlement agreement, the Court finds that MotorVac may not rescind.

## ORDER

Based on the foregoing, all the records, files, and proceedings herein, the Court **OVERRULES** MotorVac's objections [Docket No. 54] and **ADOPTS** the Magistrate Judge's Report and Recommendation [Docket No. 52]. Accordingly, **IT IS HEREBY ORDERED** that plaintiffs' Motion to Enforce Settlement Agreement [Docket No. 19] is **GRANTED**.

DATED: Sept. 30, 2002
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge